*99
 
 Mr. Justice FIELD
 

 delivered the opinion of the court.
 

 It is matter of common knowledge that statutes of limitation do not run against the State. That no laches can be imputed to the king, and that no time can bar his rights, was the maxim of the common law, and was founded on the principle of public policy, that as he was occupied with the cares of government he ought not to suffer from the negligence of his officers and servants. The principle is applicable to all governments, which must necessarily act through numerous agents, and is essential to a preservation of the interests and property of the public. It is upon this principle that in this country the statutes of a State prescribing periods within which rights must be prosecuted are not held to embrace the State itself, unless it is expresslydesignated or the mischiefs to be remedied are of such a nature that it must necessarily be included. As legislation of a State can only apply to persons and things over which the State has jurisdiction, the .United States are also necessarily excluded from the operation of such statutes.
 
 *
 

 With respect to the public domain, the Constitution vests in Congress the power of disposition and of making all needful rules and regulations. That power is subject to no limitations. Congress has the absolute right to prescribe the times, the conditions, and the mode of transferring this property, or any part of it, and to designate the persons to whom the transfer shall be made. No State legislation can interfere with this right or embarrass its exercise; and to prevent the possibility of any attempted interference with it, a provision has been usually inserted in the compacts by which new States have been admitted into the Union, that such interference with the primary disposal of the soil of the United States shall never be made. Such provision was inserted in the act admitting Missouri, and it is embodied in the present Constitution, with the further clause that the legislature shall also not interfere “ with any regulation that Congress may find necessary for securing the title in such soil to the
 
 bond fide
 
 purchasers.”
 

 
 *100
 
 The same principle which forbids any State legislation interfering with the power of Congress to dispose of the public property of the United States, also forbids any legislation depriving the grantees of the United States of the possession and enjoyment of the property granted by reason of any delay in the transfer of the title after the initiation of proceedings for its acquisition. The consummation of the title is not a matter which the grantees can control, but one which rests entirely with the government. With the legal title, when transferred, goes the right to possess and enjoy the land, and it would amount to a. denial of the power of disposal in Congress if these benefits, which should follow upon the acquisition of that title, conld be forfeited because they were not asserted before that title was issued. ,
 

 Yet such forfeiture is claimed by the defendants in this case, and is sanctioned by the decision of the Supreme Court of Missouri. • That court does not, it is true, present its decision in this light, but on the contrary it attempts to reconcile its decision with positions substantially such as we have already stated respecting the power of Congress over the public lands, ahd the inability, of the State to interfere with the primary disposal of the soil of the United States. It declares it to be well settled, that statutes of limitation of a State cannot run against the United States, nor affect their grantees, until the title has passed from the proprietary sovereignty; that these statutes operate to bar the cause of action, not to convey the title; that no cause of action upon a right of entry by virtue of the legal title by patent can exist until the patent is issued; and that the action upon the equitable title created by the location is only given by a statute of the State; and as the two rights of entry have a different origin, that the latter,-resting on the statute, might be barred, whilst that resting on the patent would continue in force, but for the operation of the fiction of relation. By a novel application of that doctrine, the court comes to the conclusion that the statute operates against both rights of entry at the same time.
 

 By the doctrine of relation is. meant that principle by
 
 *101
 
 which an act done at one time is considered by a fiction of law to have been done at some -antecedent period. It is usually applied where several proceedings are essential to complete a particular transaction, such as a conveyance or deed. The last proceeding which consummates the conveyance is held for certain purposes to take effect by relation as of the day when the first proceeding was had. Thus, in the present case, the patent, which was issued in 1862, is said to take effect by relation at the time when the survey and plat of the location, made in 1818, were returned to the recorder of land titles under the act of Congress. At that time the title of the claimant to the land desired by him had its inception, and so far as it is necessary to protect his rights to the land, and the rights of parties deriving their interests from him, the patent is held to take effect by relation as of that date.
 
 *
 

 The Supreme Court of Missouri, considering that by this doctrine of relation, the legal title, when it passed out of the United States by the patent, instantly dropped back in time to the location of the first act or inception of the conveyance, and vested the title in the owner of tffce equity as of that date, hold that the statute intercepted the title as it passed through the intermediate conveyances from that period to the patentee. “ The legal title,” said the court, “in making this circuit, necessarily runs around the-period of the statute bar, and the action founded upon this new right is met by the statute on its way, and cut off with that which existed before.”
 
 †
 

 The error of the learned court consisted in overlooking the fact that the doctrine of relation is a fiction of law adopted by the courts solely for the purposes of justice, and is only applied for the security and protection of persons who stánd in some privity with the party that initiated proceedings for the laud, and acquired the equitable claim or right to the title.
 
 ‡
 
 The defendants in .this case were strangers to
 
 *102
 
 that party and to his equitable claim, or equitable title, as it is termed, not connecting themselves with it by any valid transfer from the original or any subsequent holder. The statute of limitations of Missouri did not operate to convey that claim or equitable title to them. It only extinguished the right to maintain the action of ejectment founded thereon, under the practice of the State. It left the right of entry upon the legal title subsequently acquired by the patent wholly unaffected.
 

 In the Federal courts, where the distinction between legal and equitable proceedings is strictly maintained, and remedies afforded by law and equity are separately pursued, the action of ejectment can only be sustained upon the possession by the plaintiff’ of the legal title. For the enforcement of equitable rights, however clear, distinct equitable proceedings must be instituted. The patent is the instrument which, under the laws of Congress, passes the title of the United States. It is the government conveyance. If other parties possess equities superior to those of the patentee, upon which the pategt issued, a court of equity will, upon proper proceedings, deforce such equities by compelling a transfer of the legal title, or enjoining its enforcement, or cancelling the patent.
 
 *
 
 But, in the action of ejectment in the Federal courts, the legal title must prevail, and the patent, when regular on its face, is conclusive evidence of that title.
 

 So also in the action of ejectment in the. State courts, when the question presented is whether the plaintiff” or the defendant has the superior legal title from the United States, the patent must prevail. For, as said in
 
 Bagnell
 
 v.
 
 Broderick,
 

 †
 

 "Co
 
 ngress has the sole power to declare the dignity and effect of titles emanating from the United States; and the whole legislation of the Federal government in reference to the public lands declares the patent the superior and con-
 
 *103
 
 elusive evidence of legal title. Until its issuance the fee is in the government, which, by the patent, passes to the grantee, and he is entitled to recover the possession in ejectment.”
 

 In several of the States, and such is the case in Missouri, equities of the character mentioned, instead of being presented in a separate suit, may be set up as a defence to the action of ejectment. The answer or plea in such case is in the nature of a bill in equity, and should contain all its essential averments. The defendant then becomes, with reference to the matters averred by him, an actor, aud seeks, by the equities presented, to estop the plaintiff’ from prosecuting the action, or to compel a transfer of the title.
 
 *
 

 In
 
 Maguire
 
 v.
 
 Vice,
 

 †
 

 where the plaintiff brought ejectment on alegabtitle, and gave in evidence a patent of the United States, and the defendant relied upon an equitable defence, the Supreme Court of Missouri said: “Although our present practice act abolishes all distinctions between legal and equitable actions, yet a party who seeks relief on a merely equitable title against a legal title must, in his pleadings, whether he is plaintiff’ or defendant, set forth such a state of facts as would have entitled him to the relief he seeks under the old form of proceedings. When a party by his pleadings sets forth a merely legal title, he cannot on the trial be let into the proof of facts which show that, having an equity, he is entitled to a conveyance of the legal title. If he wants such relief he must prepare his pleadings with an eye to obtain it, and this must be done, whether he is seeking relief as plaintiff’ or defendant.”
 

 But neither in a separate suit in a Federal court, nor in an answer to an action of ejectment in a State court., can the mere occupation of the demanded premises by plaintiffs or defendants, for the period prescribed by the statute of limitations of the State, be held to constitute a sufficient equity in their favor to control the legal title subsequently
 
 *104
 
 conveyed to others by the patent of the United States, without trenching upon the power of Congress in the disposition of the public lands. That power cannot be defeated or obstructed by any occupation of the premises before the issue of the patent, under State legislation, in whatever form or tribunal such occupation be asserted.
 
 *
 

 Judgment reversed, and the cause remanded for further PROCEEDINGS PURSUANT TO THIS OPINION.
 

 Justices DAVIS and STRONG dissented.
 

 *
 

 United States
 
 v.
 
 Hoar, 2 Mason, 312; People
 
 v.
 
 Gilbert, 18 Johnson, 228.
 

 *
 

 Lessieur
 
 v.
 
 Price, 12 Howard, 74.
 

 †
 

 Gibson
 
 v.
 
 Chouteau’s Heirs, 39 Missouri, 588.
 

 ‡
 

 Lynch
 
 v.
 
 Bernal, 9 Wallace, 315; Jackson
 
 v.
 
 Bard, 4 Johnson, 230;
 
 *102
 
 Heath
 
 v.
 
 Ross, 12 Id. 140; Littleton
 
 v.
 
 Cross, 5 Barnewall and Creswell, 325, 328.
 

 *
 

 Stephenson
 
 v.
 
 Smith, 7 Missouri, 610; Barry
 
 v.
 
 Gamble, 8 Id. 881; Cunningham
 
 v.
 
 Ashley, 14 Howard, 377; Lindsey
 
 v.
 
 Hawes, 2 Black, 554; Stark
 
 v.
 
 Starrs, 6 Wallace, 402; Johnson
 
 v.
 
 Towsley,
 
 supra,
 
 p. 72.
 

 †
 

 13 Peters, 450.
 

 *
 

 Estrada
 
 v.
 
 Murphy, 19 California, 272; Weber
 
 v.
 
 Marshall, Ib. 457 ; Lestrade
 
 v.
 
 Barth, Ib. 671.
 

 †
 

 20 Missouri, 431.
 

 *
 

 Wilcox
 
 v.
 
 Jackson, 13 Peters, 516, 517; Irvine
 
 v.
 
 Marshall, 20 Howard, 558; Fenn
 
 v.
 
 Holme, 21 Id. 481; Lindsey v. Miller, 6 Peters, 672.