TEGARDEN v. LE MARCHEL.

(Circuit Court, W. D. Arkansas, Harrison Division. April 11, 1904.,

1. EJECTMENT—EQUITABLE DEFENSE IN FEDERAL COURT.

In an action of ejectment in a federal court, the defendant cannot set up an equitable title to defeat the legal title by impeaching a patent from the United States, and this rule is not affected by a state statute under which such defense would be permissible.

2. SAME—LIMITATION.

Limitation cannot begin to run against an action of ejectment in a federal court prior to the time when the patent for the land under which plaintiff claims was issued by the United States.

3. SAME—ACTION BY PATENTEE—CLAIM FOR IMPROVEMENTS MADE BEFORE ISSUANCE OF PATENT.

A state statute giving a defendant in ejectment the right to recover the value of improvements made by him in good faith under color of title cannot be applied in a case in which the plaintiff claims under a patent issued by the United States after the improvements were made, since the power of the United States to dispose of its public lands is absolute, and the right of its grantee to possession on receiving the legal title cannot be obstructed or affected by any claim made under a law of the state.

Action in Ejectment. On demurrer to answer.

Seawell & Seawell, for plaintiff.
J. C. Floyd, S. W. Wood, and G. J. Crump, for defendant.

ROGERS, District Judge. The plaintiff brought his suit in ejectment in the usual form, and under the act of March 5, 1875, found in Sand. & H. Dig. §§ 2578–2582, inclusive, stated such facts as show a prima facie title in himself to the land in controversy. They are, in substance, as follows: William Goodall in his lifetime entered the land in controversy, and shortly afterwards died, leaving certain heirs at law, who had conveyed all their title to the property to the plaintiff. After such conveyance was made, a patent for these lands was issued, on the 27th of May, 1903, to William Goodall, in lieu of one bearing date July 1, 1850, which latter patent misdescribed the land, and copies of said deeds and patent are attached as exhibits to the complaint, as the statute required. Plaintiff also claims title by virtue of a tax deed, which, for the purposes of this demurrer, need not be noticed. The defendant answered in five counts. A general demurrer was interposed to each count in the answer. The first count in the answer expressly admits possession, and then denies that such possession is unlawful, and then denies that plaintiff is entitled to possession as alleged, and then proceeds to set forth the reasons why the plaintiff is not entitled to possession; the facts stated being in the nature of an equitable defense based upon a homestead entry of the same land by the defendant on the 28th of December, 1893. It then alleges, in substance, that this defendant's homestead entry had been canceled by the fraudulent conduct of Goodall, by the procurement of fraudulent affidavits to the effect that Goodall had entered the land, and that other and different lands had been patented to said Goodall, whereby he procured the General Land Office to cancel the defendant's homestead entry, and procured the patent exhibited with the complaint

to be issued to Goodall's heirs, which representations, the defendant alleges, are false and fraudulent, and that the said Goodall had never, in point of fact, entered the land in controversy, never had possession thereof, nor had any claim, right, title, or interest in the same, and that the procurement of the issuance of said patent was a fraud both on the United States and on the defendant, and that the plaintiff, by virtue of his patent, has no right or title whatever to said land.

It will be observed that the defendant first denies that his possession is unlawful. That denial is simply a conclusion of law, and presents no issue. Keith v. Freeman, 43 Ark. 297. He then denies that the plaintiff is entitled to the possession of the same. The demurrer concedes this denial to be true, and, if the denial stood alone, the demurrer should be overruled on that ground; but the answer continues, and sets out the reasons why he is not entitled to the possession, and those reasons are in the nature of an equitable defense, and the general denial that the plaintiff is entitled to the possession must be construed in connection with the equitable matters set up in the same answer, and which constitute the facts upon which the defendant relies for defeating plaintiff's right to the possession.

The question therefore arises whether or not, in the federal courts, a defendant in ejectment may set up an equitable title to defeat a legal cause of action. This question has been settled over and over again by the Supreme Court of the United States. In Gibson v. Choteau, 13 Wall. 102, 20 L. Ed. 534, the court say:

"In the federal courts, where the distinction between legal and equitable proceedings is strictly maintained, and remedies afforded by law and equity are separately pursued, the action of ejectment can only be sustained upon the possession by the plaintiff of the legal title. For the enforcement of equitable rights, however clear, distinct equitable proceedings must be instituted. The patent is the instrument which, under the laws of Congress, passes the title of the United States. It is the government conveyance. If other parties possess equities superior to those of the patentee, upon which the patent issued, a court of equity will, upon proper proceedings, enforce such equities by compelling a transfer of the legal title, or enjoining its enforcement, or canceling the patent. But in the action of ejectment in the federal courts the legal title must prevail, and the patent, when regular on its face, is conclusive evidence of the title."

Johnson v. Towsley, 13 Wall. 73, 20 L. Ed. 485; Moore v. Robbins, 96 U. S. 530, 24 L. Ed. 848; Smelting Co. v. Kemp, 104 U. S. 636, 26 L. Ed. 875.

The principle here decided is conclusive against the sufficiency of the first count in the answer, and the demurrer as to that count must be sustained. I have not overlooked the fact that, under the statutes of Arkansas (Sand. & H. Dig. § 2574), provision is made for maintaining ejectment upon equitable titles. This class of state statutes, however, has no force in the United States courts, where proceedings in law and equity are kept distinct. Gibson v. Choteau, 13 Wall. 102, 20 L. Ed. 534.

The second count in the answer simply pleads the statute of limitations. The plaintiff, in his complaint, alleges that he rests his claim upon a patent issued by the United States, May 27, 1903, for the land in controversy; and a copy of that patent to William Goodall and his heirs, together with a deed from his heirs, is set forth as an exhibit to

the complaint. No exceptions are filed to the exhibits. It is true that the demurrer does not reach the exhibits. Percifull v. Platt, 36 Ark. 456. But inasmuch as the patent is conclusive evidence of the legal title in the person to whom it was issued, it is clear and conclusive, in a suit in ejectment, that no statute of limitations could begin to run until the patent itself was issued. The reason for this is that until the patent was issued the legal title was in the government of the United States, and, the legal title being in the United States, the statute does not run against the United States. It is obvious therefore that the statute of limitations in this case cannot avail the defendant. But the question arises whether or not that question can be raised by the demurrer. The demurrer itself admits that the defendant has been "in the actual, open, notorious, adverse possession of said land, claiming to be the owner thereof, holding the same under color of title, as set forth in paragraph No. 1 of this answer, for more than seven years next preceding the bringing of the suit by the plaintiff herein." Paragraph 1 of the answer sets up an equitable defense under a homestead entry which has been canceled, and, being canceled, of course, could not constitute color of title. Moreover, it has appeared that, if all the facts set forth in paragraph 1 were taken to be true, they could not avail the defendant in a suit in ejectment, but that his rights, if he should have any under the equitable defense set up, are to be enforced in a court of equity. His holding open, notorious, actual, adverse possession of said land, claiming to be the owner thereof under the canceled homestead entry, for seven years, would be no defense at all to the action, because during all that period, until the patent was issued, the legal title was in the United States. There is no denial in any of the counts of the answer that the patent was issued on the day stated in the complaint. The plaintiff's cause of action, therefore, arose on that day. It could not arise any earlier than that, because, as stated, in the federal courts the action of ejectment can only be maintained upon the legal title, and the government did not part with the legal title until it issued the patent, and the statute therefore did not begin to run until the patent was issued. Simmons v. Ogle, 105 U. S. 271, 26 L. Ed. 1087; Gibson v. Choteau, 13 Wall. 93, 20 L. Ed. 534; Nichols v. Counsel, 51 Ark. 27, 9 S. W. 305, 14 Am. St. Rep. 20.

The same observations which have been made to the second count are equally applicable to the third, and the demurrer to each of said counts (i. e., the second and third) must be sustained.

The fourth count in the answer alleges facts which, if true, would defeat plaintiff's title under the tax deed. But if plaintiff's tax deed is void, still he is entitled to recover, as the pleadings now stand, under his patent; and therefore the facts stated, which, if true, vitiate the tax deed, do not constitute any defense to plaintiff's suit in ejectment based on the patent.

It is not necessary to pass on the question as to whether the land was subject to taxation, but see Witherspoon v. Duncan, 4 Wall. 210, 18 L. Ed. 339. The demurrer to the fourth paragraph must be sustained.

The fifth count in the answer attempts to set up facts which, if true, would ordinarily entitle defendant to a judgment for improvements

under sections 2590–2591, Sand. & H. Dig. The count is bad for failure to show that the defendant held under color of title, as the statute prescribes. It is not necessary to decide whether defendant's entry of the land under the homestead law, if the facts relative thereto were properly alleged, would constitute color of title. In Wirth v. Branson, 98 U. S. 121, 25 L. Ed. 86, it is held:

"The rule is well settled, by a long course of decisions, that when public lands have been surveyed and placed in the market, or otherwise opened to private acquisition, a person who complies with all the requisites necessary to entitle him to a patent in a particular lot or tract is to be regarded as the equitable owner thereof, and the land is no longer open to location. The public faith has become pledged to him, and any subsequent grant of the same land to another party is void, unless the first location or entry be vacated and set aside. This was laid down as a principle in the case of Lytle et al. v. State of Arkansas et al., 9 How. 314 [13 L. Ed. 153], and has ever since been adhered to. See Stark v. Starr, 6 Wall. 402 [18 L. Ed. 925]. Subsequent cases which have seemed to be in conflict with these have been distinguished from them by the fact that something remained to be done by the claimant to entitle him to a patent, such as the payment of the price, the payment of the fees of surveying, or the like. The proper distinctions on the subject are so fully stated in the case of Stark v. Starr, supra, Frisbie v. Whitney, 9 Wall. 187 [19 L. Ed. 668], the Yosemite Valley Case, 15 Wall. 77 [21 L. Ed. 82]. Railway Company v. McShane, 22 Wall. 444 [22 L. Ed. 747], and Shepley et al. v. Cowen et al., 91 U. S. 330 [23 L. Ed. 424], that it would be supererogation to go over the subject again."

The real question, it seems to me, as to this count in the answer, is as to whether the statute referred to above, providing for the assessment of improvements made on land held in good faith under color of title, has any application at all to a case where the improvements are made on land the legal title to which is in the United States. I am not aware that there is any decision on the precise point, but I think the question is settled on principle in a number of cases. In Gibson v. Choteau, 13 Wall., at pages 99, 100, 20 L. Ed. 534, the court said:

"With respect to the public domain, the Constitution vests in Congress the power of disposition and of making all needful rules and regulations. That power is subject to no limitations. Congress has the absolute right to prescribe the times, the conditions, and the mode of transferring this property, or any part of it, and to designate the persons to whom the transfer shall be made. No state legislation can interfere with this right or embarrass its exercise, and, to prevent the possibility of any attempted interference with it, a provision has been usually inserted in the compacts by which new states have been admitted into the Union that such interference with the primary disposal of the soil of the United States shall never be made. Such provision was inserted in the act admitting Missouri,' and it is embodied in the present Constitution, with the further clause that the Legislature shall also not interfere 'with any regulation that Congress may find necessary for securing the title in such soil to the bona fide purchasers.' The same principle which forbids any state legislation interfering with the power of Congress to dispose of the public property of the United States also forbids any legislation depriving the grantees of the United States of the possession and enjoyment of the property granted by reason of any delay in the transfer of the title after the initiation of proceedings for its acquisition. The consummation of the title is not a matter which the grantees can control, but one which rests entirely with the government. With the legal title, when transferred, goes the right to possess and enjoy the land; and it would amount to a denial of the power of disposal in Congress if these benefits, which should follow upon the acquisition of that title, could be forfeited because they were not asserted before that title was issued."

And at page 103, 13 Wall., 20 L. Ed. 534, the court also said:

"But neither in a separate suit in a federal court, nor in an answer to an action of ejectment in a state court, can the mere occupation of the demanded premises by plaintiffs or defendants for the period prescribed by the statute of limitations of the state be held to constitute a sufficient equity in their favor to control the legal title subsequently conveyed to others by the patent of the United States, without trenching upon the power of Congress in the disposition of the public lands. That power cannot be defeated or obstructed by any occupation of the premises before the issue of the patent, under state legislation, in whatever form or tribunal such occupation be asserted."

I am therefore of the opinion that the statute above referred to, providing for the assessment for improvements, has no application to a case like this, and the demurrer to the fifth count must also be sustained.