HIGGINBOTHAM et al. v. WEAVER.
(No. 694.)

(Court of Civil Appeals of Texas. Amarillo.
April 24, 1915. Rehearing Denied
June 5, 1915.)

1. BOUNDARIES ☞41—INSTRUCTIONS—APPLI-
CABILITY TO EVIDENCE.

In an action where the boundary line of a
railroad grant block was in dispute, and there
was evidence by defendants' witnesses that they
had surveyed the lines of the block many years
before, and found some of the original monu-
ments, and that the line so surveyed ran east
of certain wells still in existence, defendant was
entitled to a requested special charge that, if
the witnesses found original corners on the line,
and those corners were east of the wells, the
jury should answer a special issue as to the
location of the line contrary to plaintiff's con-
tention.

[Ed. Note.—For other cases, see Boundaries,
Cent. Dig. §§ 205–207; Dec. Dig. ☞41.]

2. TRIAL ☞260—REQUESTED INSTRUCTIONS—
SPECIAL ISSUE.

That charge was not covered 'by a special
issue as to whether the true corner of the tract
was established by running certain lines as con-
tended by defendant.

[Ed. Note.—For other cases, see Trial, Cent.
Dig. §§ 651–659; Dec. Dig. ☞260.]

3. TRIAL ☞350—SPECIAL ISSUES—EVIDEN-
TIARY FACT.

In an action where the location of the west
line of a block in a railroad land grant was in
issue, a special issue as to whether a certain cor-
ner was the true corner of another block in the
grant, not directly affecting the line in contro-
versy, called for a finding of evidence, and should
not have been submitted under Vernon's Sayles'
Ann. Civ. St. 1914, art. 1985, requiring the spe-
cial verdict to find the facts established by the
evidence, and not the evidence by which they are
established.

[Ed. Note.—For other cases, see Trial, Cent.
Dig. §§ 828–833; Dec. Dig. ☞350.]

4. TRIAL ☞260—SPECIAL ISSUES—REQUEST-
ED CHARGE.

The refusal of a requested instruction ap-
plied to the facts for the finding of a substantive
issue, when not presented in the main charge,
is error.

[Ed. Note.—For other cases, see Trial, Cent.
Dig. §§ 651–659; Dec. Dig. ☞260.]

5. BOUNDARIES ☞33—BURDEN OF PROOF—
LOCATION OF LINE.

Where the plaintiff's right to recover rested
on the establishment of a disputed line, he could
not object that defendant's evidence tending to
show that the line was not as claimed did not
definitely locate the line; since the burden of
proving the line was on him; not on defendant.

[Ed. Note.—For other cases, see Boundaries,
Cent. Dig. §§ 146–152; Dec. Dig. ☞33.]

6. ADVERSE POSSESSION ☞73—STATE SCHOOL
LANDS.

A grantee under a deed conveying school
lands, who assumed the deferred payments, went
into possession, and paid taxes on the land, can
rely on the five-year statute of limitations,
though his claim conflicts with patented lands
under a senior survey.

[Ed. Note.—For other cases, see Adverse Pos-
session, Cent. Dig. §§ 435–442; Dec. Dig. ☞
73.]

Appeal from District Court, Garza County;
W. R. Spencer, Judge.

Action by F. M. Weaver against R. W.
Higginbotham and others. Judgment for the
plaintiff, and defendants appeal. Reversed
and remanded.

J. E. Garland, of Lamesa, Gustavus &
Jackson, of Amarillo, Ellis Douthit, of Sweet-
water, and S. H. Morrison, of Big Springs,
for appellants. Beall & Spencer and W. W.
Beall, all of Sweetwater, Jas. L. Shepherd,
of Colorado, Tex., W. D. Benson, of Lubbock,
and W. F. Robinson, of Lamesa, for appellee.

HENDRICKS, J.     The Texas & Pacific
Railway Company surveys involved in this
record are embraced within the large grant
commonly known as the Texas & Pacific Rail-
way 80-mile reservation, partly situated in
Dawson county, Tex., and was one granted
by the Legislature of the state, extending 40
miles south and 40 miles north of what is
designated in this record as the center line,
which also was a base line for the construc-
tion of said surveys. This 80-mile reserva-
tion, extending 40 miles north and 40 miles
south of the center line, is divided into dif-
ferent blocks, each of which extends from
the center line to the north boundary line of
said reservation (likewise from the center
line to the south boundary line of said res-
ervation, with which we are not concerned);
and said blocks lying north of said center
line are divided into numerical townships,
beginning at said center line, and numbered
from the south to the north as Nos. 1, 2, 3, 4,
and 5, said townships containing eight sec-
tions north and south, and six sections east
and west.

As pertinent to this litigation, the 40-mile
blocks north of the center line begin from
the east as blocks numbered 33, 34, 35, and
36, and east of and adjoining block No. 36, at
an approximate distance of about 24 miles,
there is situated a system of league surveys
granted to Glasscock, Moore, Borden, Ward,
Wheeler, and Dickens counties, at some pe-
riod between 1883 and 1889—just when is not
definitely stated. South of the league sur-
veys is block 37 of the Texas & Pacific
reservation, shortened, of course, in distance
north from the center line, by the county
school land surveys, as indicated. Situated
north of the county school land surveys men-
tioned, and of block No. 36 of the Texas &
Pacific Railway Company grant, is the Tay-
lor county school land four-league survey,
located in the year ———, with intervening
school land surveys, however, of narrow
width and of rather irregular shape, between
the county school land leagues on the north
and the county grants on the south, and
known as the Godair surveys—presumably
placed on an intervening vacancy. The six
sections in the township lying east and west,
and in the different blocks, begin with the
initial section No. 1 at the northeast corner
of the respective townships and blocks, ex-
tending west, and thence east numerically to
the terminal section No. 48, in each town-
ship; hence section 6 of block No. 36 is the

northwest section of said block, as well as of township No. 5. The principal issue in this case is the true location of the northwest corner of this section, bringing into dispute the true location of the western boundary line of said block No. 36 and the northern boundary line of said reservation, the location of the latter, at least, across blocks 35 and 36.

Quoting from appellee's brief:

"The plaintiff in this case contended that the true location of the northwest corner of section 6, block 36, township 5 north, was 12 miles S. 75° 15′ W. of the northeast corner of section 1, block 35, township 5 north, and the northwest corner of section 6, block 34, township 5 north, Texas & Pacific Railway Company surveys, the 'Coffee Corner,' to an intersection with a line drawn N. 15° 15′ W. from the northwest corner of section 6, block 36, township 2 north, about 24 miles, or to an iron pin set in ground by R. E. Estes, as stated in first issue of the court's charge. The contention of the defendants was that the true location of the northwest corner of section 6, block 36, township 5 north, was at a point 560 varas east and 145 varas north of the Estes corner, known as the 'Dodd Corner,' as stated in second issue in court's charge."

The cause was submitted to the jury by the trial court on special issues, consisting of the three following, the first and the third of which were answered affirmatively by the jury in favor of the plaintiff, and the second answered negatively against the defendants:

### "First Special Issue.

"Do you find the western boundary line of block 36 and section No. 6 at its northwest corner is located by projecting the north line of block No. 34, township 5 north, from the known corners, on its northern boundary line, on the angle shown by said corners, 12 miles west to its intersection with a line extending north 15 deg. 15 min. west from known corners on the western boundary line of block No. 36?"

### "Second Special Issue.

"Do you find the northwest corner of survey No. 6, block 36, township 5 north, and the west boundary line of block No. 36 aforesaid are established by running a line north 14 deg. 4 min. west from the corner at the southeast corner of survey No. 48, block 35, township 4 north, 16 miles, and from thence south 75 deg. 41 min. westerly 12 miles?"

### "Third Special Issue.

"Is the rock pile known as the 'Coffee Corner' placed at the true northeast corner of section 1, block 35, township 5 north, Texas & Pacific Railway Company surveys, Dawson county, Tex.?"

Appellants introduced the deposition testimony of S. H. Cowan, who said that at a period in the past he had been engaged in surveying for 15 years, and at one time was the county surveyor of Howard county, and by virtue of that office was designated the district surveyor for the Howard county land district, which comprehended ten other counties, including Dawson county, all attached to Howard county for surveying purposes, and held this position from 1884 to 1888. The Texas & Pacific reservation surveys, with which we are immediately interested, were senior surveys to the county school land surveys, and the Godair survey, as mentioned—block 36 on the west, and block 37 south of the county grants—with which we are directly interested, were located in January, 1876. The northern part of block 34 was located in April and May, 1876, and block 33 in December, 1875. Cowan said:

"I knew a great deal about these surveys, because I surveyed all over these counties during the time I was district surveyor in Martin and Dawson counties in what are known as the Texas & Pacific Railway Company surveys. I began to do such surveying before I became district surveyor of that land district in 1884."

He said that in 1889 he surveyed from the northwest corner of the Buffalo pasture of C. C. Slaughter's ranch across block 36, and thence north on the western boundary line of said block 36 to the northern boundary line of the Texas & Pacific 80-mile reservation; which was done for the purpose of locating other lines, and particularly the school land leagues west of block 36. He testified that he made memoranda with reference to his surveys in block 36 at the time of making the same for the purpose of keeping a record of the work performed by him, and for the purpose of knowing what he found on the ground in running the lines. In making this particular survey he claimed to have begun at what he designates as the northwest corner of the old Buffalo pasture of C. C. Slaughter, and then ran 2 miles north to the dividing lines between townships 4 and 5, and thence west 6 miles to the western boundary line of block 36. The field book and testimony as to the western boundary of block 36 is quoted from the record as follows:

"Survey for C. C. Slaughter, July 5th, 1889: July 6th came to Buffalo—began at N. W. corner Buffalo pasture, thence north 13 W. with old fence 2 miles—couldn't find corner (I may explain that this is the old fence line which I surveyed in 1884); thence S. 77 on Tsp. line —no old corners found, 1 mile. Dinner. Six miles found old corner—four pits and mound on Tsp. line 4 and 5 blk. 36—plain—began at that point N. 13 W. var. 12 36 min. 1 mile old mound and pits. Missed it 24 feet. Changed var. to 12 20 min. N. 13 W. at 2 miles old corner plain—cedar stake at about 300 feet to N.—put there 1887 by me. At 3 miles, no corner found—4 miles none—5 miles none—6 miles none—7 miles found 140 feet to the west showing that var. too small by about 15 min. (My var. of about 12 36 min. would have fit the line almost exactly. Windmills 200 yards N. W. of corner at 7 miles and 700 vars. being 3,336 feet, the N. W. corner of league 277.) (I should explain that I didn't find nor did I expect to find league corner, but this was the point which the field notes of league 277 calls as with the T. & P. line.)"

Cowan further said that he was acquainted with two of the original surveyors of the Texas & Pacific reservation grant, one Sid Woods having been a deputy surveyor under him when holding the office of district surveyor of Howard county, and further testified:

"We all knew there were no corners or markings except block or township lines, and on those lines the original surveyors made markings with an earth mound and two pits at every half mile, an earth mound and four pits at the mile cor-

ners, to which sometimes rock was added and stakes."

The testimony and memoranda of Cowan, exhibiting what is claimed to be a short run on the northern boundary of block No. 36, and a partial run of the Taylor county school land, is as follows:

"Survey for W. C. Bishop Nov. 11, 1889, Taylor county school land. Beginning at the N. E. corner survey 4 block 36, Tsp. 5 N. T & P.—old mound rock had been added (cor. Bishop's pasture); thence S. 77 W. (var. 12 30 min.) 1 mile old mound and 4 pits, added cedar post, crossing old cedar lake road; thence S. 77 W. 1 mile old mound and pits, at 2 miles mound and pits cedar stake marked 130 T. P. (130 mile on north boundary line T. & P. 80-mile reservation). Missed it 18 feet S. var. therefore 12 min. too great. Begin at N. E. 5 cedar stake being S. E. corner Taylor county land (meaning corner of survey 5 T. & P. survey and S. E. corner of Taylor county school land); thence N. 13 W. (var. 12 22 min.) at 6,945 feet went south 77 W. 6,945 feet to center of league and returned to said point (meaning point from which he had gone S. 77 W.), continued N. 13 W. 17889 ft. put in cedar stake for N. E. corner league 3—Taylor county land. * * ' * "

Dalmont, a witness for defendants, testified he was with Cowan on this run, and said:

"There was a well put down there in the place where Mr. Cowan drove that stake for the center of that league [No. 1]. I know that well was put down there in pasture, but I don't know whether it was put down where he drove that stake or not. * * * I know that Mr. Cowan drove that stake down there for the center of the league, and I saw the well that was subsequently put down. * * * The position of the well with reference to the position of the stake that had been driven there for the center of the league by Mr. Cowan looked just the same to me. * * * He drove the pin down there, and Holloway drilled the well, and I went and put up the mill, and if there was any difference I never paid any attention to it, and I never noticed it or paid any attention to it; if I did I don't remember now. That is the circumstances of the thing. I never could tell that the pin was moved or whether the well was drilled where the pin was or not."

And, speaking of the beginning of the Taylor county survey, he said:

"There was a mound there at the time. It was probably four or five feet across and a foot high: that was where he turned east there. It was crossed [grassed] over, and apparently seemed to be an old mound. It must have been in the winter of 1889 or 1890 that we did that."

Cowan also testified:

"In my survey in block 36, and in running my line north to the reservation line, I did pass windmills, and made a note of that fact in my field book, which is shown in the memoranda. * * * Independent of this record, however, I remember the fact of having passed windmills, and independent of my notes made at the time, I remember that I observed that each of the corners of the Texas & Pacific Railway Company surveys which I have referred to in my memorandum were original corners."

T. M. Lightfoot, the present county and district surveyor of Howard county, also a witness for defendants, testified that he ran the western boundary line of block 36 in 1893; that he put down the "Kid Camp" wells in 1888, "up towards the northeast corner of [league] 277," which were the wells referred to by Cowan in his memoranda of his run of the western boundary of block 36, and with reference to which Lightfoot claimed that he ran east of said wells "about 200 varas." The wells are still existent, though dismantled as to the windmills.

Lightfoot said that he was testifying from memory, and a comparison of his run with that of Cowan exhibits that neither found the same corners claimed by each to have been found in making the respective surveys. With reference to Cowan's run of the west boundary line of block 36, as indicated by quotations from his memoranda, Cowan's field book discloses a further run west for eight miles on a claimed continuation of the northern Texas & Pacific line to a mound and four pits and an old stake marked "131–36," which Cowan said meant the 131st mile in block 36, and which, with reference to said milepost, is necessarily a mistake, and which, according to the field notes, the 131st mile is situated many miles east of said eight-mile run; and when Mr. Cowan made the run of two miles in surveying for Bishop, for the northeast corner of 4 and the northwest corner of 5, in block 36, for the purpose of making the partial survey of Taylor county school land, there is also a mistake, as follows: At the end of the two-mile run he mentions in his field book "mound and pits, and cedar stake marked 130 T. P." If he were at the northeast corner of 5, and the northwest corner of 4, in block 36, he was not at the 130th mile, according to the original field notes; the 130th mile was three miles east of that point. From the testimony of Dalmont and of surveyors with reference to the location of the Taylor county school land, inferentially showing where the same is now situated, the jury could believe that Cowan was at the point he said he was; and the strictures of appellee as to the testimony of Cowan and Lightfoot is a jury, and not a judicial question.

[1-3] Appellants assign error on account of the action of the trial court in refusing to submit to the jury the following specially requested charge:

"If you find and believe from the evidence that the witnesses Cowan and Lightfoot surveyed a part of the west line of block 36 of the Texas & Pacific Railway Company surveys, and you believe that they or either of them found original corners of the Texas & Pacific work on said line, and, if any, were east of what is mentioned in the evidence 'Kid Camp' Wells, then you will answer question submitted in paragraph 3 of the court's charge by saying, 'No.'"

Appellants' proposition is that the location of the west line could be determined from the original monuments on the ground contiguous to the land in controversy, and hence were entitled to an affirmative charge, presenting their theory with reference to this particular line, and which the court did not present in either of the three issues submitted.

If the footsteps of the original surveyor were east of the Kid Camp wells, plaintiff could not recover, at least as to the west side.

The special charge requested by appellants was the presentation of a substantive issue, more so than the presentation of the third issue submitted by the court as to the "Coffee Corner," whether it was the true northeast corner of section 35, township 5 north, of the T. & P. survey, which is calling for a finding of evidence. The second special issue submitted in favor of defendants did not submit, nor tend to submit, the issue presented in appellants' special charge, and which, from appellants' theory, as a jury question, could have been sustained by the testimony.

[4] The refusal of a requested instruction applied to the facts for the finding of a substantive issue, when not presented in the main charge, is error. Yellow Pine Oil Co. v. Noble, 101 Tex. 125, 105 S. W. 318; Ft. Worth & Denver City Ry. Co. v. Taylor, 153 S. W. 359, and cases cited. We overrule the first assignment, based upon a requested peremptory instruction under which appellants assert that the issue is undisputed, but sustain the second assignment, presenting the special charge embodying the issue as a jury question.

The court, in the submission of special issues, "shall submit the cause * * * raised by the pleadings and evidence," and "the special verdict must find the facts established by the evidence, and not the evidence by which they are established." Articles 1984 and 1985, Vernon's Rev. Civ. Statutes.

[5] The Western boundary of block 36, an essential disputed issue, of course, was a prerequisite ascertainment by plaintiff to recover; the burden was upon him, and not upon defendants, so that the court could decree the lines; and, if this burden was not maintained, to that extent he failed; and the criticism of plaintiff that defendants did not exactly define the west line, or the exact distance from the "Kid Camp wells," is not tenable under the plea of not guilty. We think, however, that the issues requested to be submitted by defendants, whether the other windmill was in the center of Taylor county league No. 1, and whether Cowan began his survey of the east boundary line of the Taylor county leagues from an original mound as the northeast corner of section 5, would have been the submission of findings for evidence. Again, if the court should submit the special charge discussed by us, the requested charge No. 6, as to the division fence, is unnecessary.

Considering the testimony of Harris, of the firm of Higginbotham, Harris & Co., as to the character of the claim of the defendants to the true line, we overrule the eighth assignment of error, challenging the action of the trial court in not submitting the statute of limitations. Hand v. Swann, 1 Tex. Civ. App. 245, 21 S. W. 283; Shaw v. Windham, 155 S. W. 638.

Appellants' fifteenth assignment of error, aided by the statement in their brief, does not sufficiently show error, referring to the first special issue submitted by the court as to the projection of certain lines from known corners, as being upon the weight of the testimony. All the witnesses who testified as to the north line of block 34 testified to some original corners. Estes testified with reference to undisputed corners on 36, along the division line between 36 and 37, from the center line—as to those corners he is uncontradicted—unless it may be that the common corner of blocks 37 and 36 where the county school land surveys begin would be in doubt; and as the question and statements are presented we are unable to say there was error.

[6] The appellant Cumpton assigns error on account of the failure of the trial court to submit to the jury the plea of the five-year statute of limitations. Appellee argues that, as Cumpton's claim is in conflict with patented land under a senior survey, the land being held as school land, the statute of limitation does not apply. The deeds are not void upon their face, but simply show to be conveyances of school land with the assumption by Cumpton of the deferred payments to the state. If Godair had conveyed the same land without having mentioned it as school land, and Cumpton had gone into possession under proper claim, and held the land and paid the taxes under said deed, for the required period, under the proper possession, of course, the statute of limitations would have been complied with, though Godair never had title from any source.

If we properly construe the case of Dutton v. Thompson, 85 Tex. 117, 19 S. W. 1027, by Chief Justice Stayton, the matter of the claim of school land by the five-year statute of limitations, though patented to another by the state, has been, in substance, decided. The school land in that cause had been patented to the appellant as the assignee of another. The trial court held that the appellee was entitled to hold a part of the land under his plea of statute of limitations, based on adverse possession under recorded deed and the payment of taxes. Chief Justice Stayton said:

"It is claimed on this appeal [in that cause] that limitation would not run in favor of appellee until the patent issued; but appellant, and the person through whom he acquired the right to a patent, had such interest in the land as would have entitled either of them to have maintained an action of trespass to try title to the land against any person entering upon it during the time of their respective ownerships, and we see no reason why limitation would not run against a person having such interest in land, although the state could not be thus barred. This was the holding in reference to University lands in the case of Parker v. Brown, 80 Tex. 557, 16 S. W. 262." Converse v. Ringer, 6 Tex. Civ. App. 51, 24 S. W. 705; Paterson v. Rector, 127 S. W. 561.

We are not prepared to say, as the evidence is presented in the two briefs of appellants and appellee, that the evidence sustaining

the five-year statute of limitation is undisputed, and that Cumpton deserved a peremptory instruction.

Though there are agreements with reference to title of the respective parties to the suit, it would be better if plaintiff more specifically set out the boundaries of his lands.

For the errors indicated, the cause is reversed and remanded.