WHITAKER v. McCARTY. (No. 1023.)*

(Court of Civil Appeals of Texas. Amarillo.
June 21, 1916. Rehearing Denied
Oct. 4, 1916.)

1. PUBLIC LANDS ⬤⇒173(17)—SCHOOL LANDS
—"RIGHT TO PURCHASE"—"SUIT BY CLAIM-
ANT OF RIGHT TO PURCHASE."

A title interposed to divest from an ad-
versary is not a claim, or right to purchase
free public school land, nor a suit by one claim-
ing the right to purchase land, within Rev. St.
1911, art. 5458, requiring such claimants to
sue within one year of the award and article
5459, making failure to sue within such time
conclusive that all requirements of the law as
to such sales have been complied with.

[Ed. Note.—For other cases, see Public Lands,
Dec. Dig. ⬤⇒173(17).

For other definitions, see Words and Phrases,
Second Series, Right to Purchase.]

2. PUBLIC LANDS ⬤⇒173(17)—SCHOOL LANDS
— SALE — RIGHTS OF PURCHASERS — AS-
SIGNEES.

In view of Acts 29th Leg. c. 47, § 10, pro-
viding that purchasers of school lands may al-
so sell their lands or a part thereof in quanti-
ties of 40 acres or multiples thereof, and Ver-
non's Sayles' Ann. Civ. St. 1914, art. 5435a,
as to sales of such lands, article 5435b, pro-
viding that when the judgment of any court is
filed wherein the title to any such land is de-
creed out of the owner, such judgment shall be
duly certified, article 5435d, providing that no
account shall be opened and no patent issued
except in such quantities as are now provided
by law in excess of personal transfer, and Rev.
St. 1911, art. 5436, permitting purchasers to
sell their land in quantities of 40 acres or mul-
tiples thereof, the ten-year statute of limitation
is not applicable in favor of an adverse occu-
pant of school land, and cannot be invoked
against a purchaser from the state before pat-
ent, where the amount of land is not a multi-
ple of 40 acres and the adverse claimant claims
under transfer by a judgment against the pur-
chaser.

[Ed. Note.—For other cases, see Public Lands,
Dec. Dig. ⬤⇒173(17).]

Appeal from District Court, Dickens
County; Jo A. P. Dickson, Judge.

Action by Jennie McCarty against B. F.
Whitaker. Judgment for plaintiff, and de-
fendant appeals. Affirmed.

W. D. Wilson, of Spur, and W. H. Bledsoe,
of Lubbock, for appellant. B. G. Worswick,
of Dickens, and B. D. Glasgow, of Spur, for
appellee.

HENDRICKS, J. The appellee, Jennie Mc-
Carty, sought to recover from appellant, B.
F. Whitaker, the title and possession of 320
acres of land, the west half of survey No.
4, A. C. H. & B., in Dickens county, Tex., al-
leging the right through a school land title,
evidenced by a sale and award by the state
of Texas, to the original purchaser, on No-
vember 2, 1897, with proof of three years'
occupancy, made on October 22, 1901, pay-
ment of one fortieth of the purchase money
by the original purchaser, with all interest
due the state of Texas, and that thirty-nine
fortieths of the purchase money was still
owing to the state of Texas for said

land. She also averred that her husband,
now deceased, was the vendee of the land
through mesne conveyances, in good standing
in the general land office of the state. She
also pleaded the act of the Twenty-Ninth
Legislature (Acts of 1905, p. 35; now article
5458, Revised Civil Statutes), which pre-
scribes a limitation of one year for the bring-
ing of suits by all persons claiming the right
to purchase any land belonging to the state
and sold and awarded under the provisions
of the law authorizing said sale, and that
no suit had been brought by the defendant
or any one else for the title and possession
of said land within the limitation of time
prescribed by the act. The defendant, Whit-
aker, additional to exceptions, pleaded not
guilty; also asserted title under the ten-
year statute of limitation, and disclaimed all
interest in the land except 42 1/10 acres par-
ticularly described by metes and bounds.
The plaintiff, by supplemental petition, inter-
posed a general demurrer to the whole of the
defendant's answer, also an exception to de-
fendant's plea of limitation. The trial court
sustained the plaintiff's general demurrer to
the whole of defendant's answer, and like-
wise sustained the special exception—really
a general demurrer—to the defendant's plea
of title under the ten-year statute of limita-
tion. The appellee, Mrs. McCarty, proved
her school land title at the trial, in accord-
ance with the pleading and assertion of same
in her amended petition.

[1,2] The cause is principally briefed, and
controverted as a pivotal question in this
court, as to the application of articles 5458
and 5459, Revised Statutes. Article 5458 pre-
scribes:

"All persons claiming the right to purchase
or lease any public free school lands, * * * *
which have been heretofore, or which may be
hereafter, sold or leased to any other person
under any provision of the law * * * shall
bring his suit therefor within one year after
the date of the award of such sale or lease,
and not thereafter."

Article 5459 prescribes:

"If no suit has been instituted by any person
claiming the right to purchase or lease any of
said land within the period of time limited in
the foregoing article, it shall be conclusive evi-
dence that all the requirements of the law with
reference to the sale or lease of such lands
have been complied with"

—except that any action of the state as to
the land shall not be affected. It is clear,
as applicable to the ten-year statute of lim-
itation, that a title interposed for the purpose
of obtaining a divestiture from an adversary
is not a claim, or right to purchase, public
free school land, and neither is it a suit "in-
stituted by [a] person claiming the right to
purchase any of said land," and hence, with-
out unnecessary argument, we think that
the purpose and scope of the articles in ques-
tion do not embrace the particular subject-
matter mentioned; and, to that extent, as an

academic question, we think appellant's position, addressed to the action of the trial court, is correct. However, upon consideration of this record, we infer that, as a matter of practical importance referable to the antagonism of titles between these litigants, the crucial question is, whether the ten-year statute of limitation is applicable in favor of an adverse occupant of school land, and can be invoked against a purchaser thereof from the state before patent, where the amount of land in litigation, claimed under the statute, is not a multiple of 40 acres.

In consideration of this question we are confronted in appellant's brief with authorities, urged as decisive, in favor of the contention that such an adverse occupancy absorbs the title to school land upon the conditions presented, as much so as the divestiture of patented land under similar conditions. Paterson v. Rector, 127 S. W. 561; Thompson v. Dutton, 96 Tex. 205, 71 S. W. 544; Dutton v. Thompson, 85 Tex. 117, 19 S. W. 1026; Parker v. Brown, 80 Tex. 557, 16 S. W. 262; Lawless v. Wright, 39 Tex. Civ. App. 26, 86 S. W. 1039.

In the cause of Dutton v. Thompson, 85 Tex. 117, 19 S. W. 1027, by the Supreme Court (Chief Justice Stayton rendering the opinion) J. E. Brooke contracted to purchase the land from the state, February 26, 1877, which was patented on November 26, 1889. The appellant, Dutton, was assignee of Brooke; the appellee Thompson asserted title to 9 and a fraction acres by the statute of limitation of five years. The court held that limitation would run in favor of appellee before the patent issued, stressing the proposition that Mrs. Dutton, as well as the person through whom she acquired the right to a patent, had such an interest in the land as would have entitled either of them to have maintained an action of trespass to try title against any person entering upon the land during the time of each respective ownership; and it was said:

"We see no reason why limitation would not run against a person having such interest in land, although the state could not be thus barred."

The same case was thereafter decided again on appeal (San Antonio court), styled Thompson v. Dutton, 69 S. W. 641, 642, wherein the ten-year statute of limitations, interposed by Thompson, tacking his possession with that of others, was one of the principal questions involved. Chief Justice Fisher said:

"When the state parted with the title by patent, it related back to the inception of title, which commenced with the application to purchase, and the title established at that time was sufficient to sever the land from the mass of the public domain, so that limitation would operate against it."

This doctrine was expressly denied by the Supreme Court of the United States. Gibson v. Chouteau, 13 Wall. 92–100, 20 L. Ed. 534. The same case (Thompson v. Dutton, 96 Tex.

209, 71 S. W. 545, opinion by Chief Justice Gaines) asserts the proposition of limitation, in holding that the court was of opinion "that the evidence tended to show that the dwelling house was so continuously occupied, and that therefore as to the land, at least upon which the house stood, he (Thompson) was entitled to a judgment," provided the jury found on proper submission ten years' adverse and continuous occupancy before the suit was brought.

The case of Paterson v. Rector, 127 S. W. 561, we are assuming squarely decided the question that ten years' adverse possession (without a showing, however, that before the judgment there was a title from the state by patent) would operate against a school land title. Whether the amount recovered was a multiple of 40 acres is not disclosed.

The case of Parker v. Brown, 80 Tex. 557, 16 S. W. 262, without entering into an analysis of the same, is not authority, except by recognition in subsequent cases, as it is apparent that the question of limitation was not necessary to the decision of the case; neither was the question, herein mooted, discussed or raised.

The federal courts hold, including the Supreme Court of the United States, that there can be no disseisin, sufficient to start the statute of limitations in operation as against the locator of a claim of public land, prior to the issuance of a government patent therefor, and that limitation does not begin to run against a grantee holding under the general laws of the United States until the date when such grantee acquires title. For a full discussion of this subject, as applied to United States lands, with citation of numerous authorities, we refer to the case of Tyee Consolidated Mining Co. v. Langstedt, 136 Fed. 125, 69 C. C. A. 548. It is not our purpose to put in opposition the antagonism of principle asserted by the appellate courts of this state, and that of the federal courts, but the same are presented in a spirit of clarification of the subject, and as some part of its present judicial history.

The Supreme Court of the United States seems to consider three elements as inherently involved in deciding and elucidating the question: First. All the cases involved the attempted acquisition of title by an adverse occupant invoking state statutes against the grantees of United States land. The court asserts the principle, forbidding state legislation from interfering with the power of Congress to dispose of the public property of the United States and of depriving the grantees of its lands of the possession and enjoyment of such property, notwithstanding any delay by the government in transferring the final title by patent. Second. Ejectment in those courts is based upon the legal title, which seems to have been the form of action producing the litigation and the questions at issue, and which, in those courts, can be

based only upon the legal title, which is never in the settler, but remains in the United States until final patent. Third. "The consummation of the title is not a matter which the grantees can control, but one which rests entirely with the government. With the legal title, when transferred, goes the right to possess and enjoy the land, and it will amount to a denial of the power of disposal in Congress if these benefits, which should follow upon the acquisition of that title, could be forfeited because they were not asserted before that title [the patent] was issued." Gibson v. Chouteau, 13 Wall. 92–100, 20 L. Ed. 534; Tyee Consolidated Mining Co. v. Langstedt, supra; Redfield v. Parks, 132 U. S. 239, 10 Sup. Ct. 83, 33 L. Ed. 327.

The act of April 24, 1874, providing for the sale, of alternate sections of school land, as surveyed by railroad companies, which gave validity to the title involved in the cases of Dutton v. Thompson and Thompson v. Dutton, supra, is considerably different from the act under which the present land was bought; but, so far as a decision of this case is concerned, it is unnecessary to detail all the differences and discrepancies. Section 14 of that act prescribed:

"In case said purchaser desires to sell such lands after he has settled upon the same, as above provided, he may do so, but in that event his vendee shall substitute his obligation in lieu of the obligation of his vendor." Gammel's Laws of Texas, vol. 8, p. 145.

Section 10 of the act of 1895, by virtue of which the particular land in controversy was purchased, provides that:

"Purchasers may also sell their lands or a part of the same, in quantities of forty acres or multiples thereof, at any time after the sale is effected under this act, and in such cases the vendee, or any subsequent vendee, or his heirs or legatees, shall file his own obligation with the Commissioner of the general land office, together with the duly authenticated conveyance * * * from the original purchaser," etc. Gammel's Laws of Tex. vol. 10, p. 66.

Keeping thus in mind the character of personal transfers, viewing them as conveyances in person by the purchasers from the state to vendees and by them to sub-vendees, and also considering such vendees as purchasers direct from the state, when the commissioner files such conveyances of public school land, thus creating a change of title recognized by the state, it is noted that the Legislature, in 1911 ([Vernon's Sayles' Ann. Civ. St. 1914] article 5435a) provided for transfers, other than personal, also effectuating a change of title, and for the keeping of accounts with the transferees, which transfers were not probably embodied within the purview of the previous acts—at least not all of them. Transfers other than by the direct purchasers by the heirs, executors, administrators, and survivors in community, as well as by guardians and trustees under deeds of trust or mortgages, are recognized; also transfers executed by the officers of court, by virtue of an execution or order of sale, and in all cases where the title emanates and is

authorized by any court proceedings of the courts of the state. In those cases it is now the duty of the commissioner to cause the transfer, together with the necessary obligations, and other instruments of verification, to be filed in his office, and a separate account of the land is to be transferred from the direct purchaser and from the state, and from the parent tract. Article 5435b provides for the character of certified copies to be filed with the commissioner of the general land office, and also says:

"When the judgment or decree of any court of this state is filed wherein the title to any of such lands is decreed out of the owner, such judgment shall be duly certified to by the clerk of the court in which judgment was rendered."

A part of article 5435d prescribes:

" * * * That no account shall be opened and no patent issued as provided for in this act, except in such quantities as are now provided by law in cases of personal transfer."

Article 5436 provides that:

"Purchasers prior to August 12, 1907, may also sell their lands or a part of the same, in quantities of forty acres, or multiples thereof, at any time after the sale"

—and further providing, as in the act of 1895, above quoted, that the purchaser shall file his obligation with the transfer from the original purchaser with the intermediate vendees' transfer in the land office.

It is evident that if an account cannot be opened, nor a patent issued, with reference to the transfers of land other than personal (regarding a judgment for the land as such) except in such quantities as are provided by law in cases of personal transfer, and, if purchasers from the state can only sell their lands in quantities of 40 acres or multiples thereof a judgment of a court, considering it as a transfer of land not personal, if decreeing a tract of land which is not a multiple of 40 acres—such a judgment could not effectuate a transfer of the title to land that could be recognized by the state of Texas; and we construe the statute mentioned as a limitation upon the power of the holder of state school land to sell the same as long as the legal title is in the state, to purchasers, in improper quantities. It is true there has been an amendment to the act of 1895, which prescribes that:

"Land which has been sold by the state prior to August 12, 1907, and which has been or may be subsequently transferred, in tracts other than in legal multiples, may, in the discretion of the commissioner, be so patented." Article 5437, Acts 1905.

This article, though it be construed, in its literal terms, to cover a purported transfer of school land by judgment, could not assist a judgment for an illegal multiple of land based upon the statute of limitation, because, under that statute, the judgment when rendered should at that time purport to carry the title, between the parties, emanating from the state, "full title, precluding all claims." Article 5679, Rev. St.; Burton's Heirs v. Carroll, infra. A judgment, depending as a passage of title, upon the exercise of

a subsequent discretion of the commissioner of the general land office, would not meet the statute of limitation. This particular question was neither discussed nor mooted in the cases of Dutton v. Thompson and Thompson v. Dutton, supra, or any other case. It would not be denied, of course, that the sovereignty, at least before final divestiture of title, has the right to prescribe and regulate the mode, the amount, and the character of alienation of its public school lands by its grantees to others. The third ground mentioned above, actuating the Supreme Court of the United States in excluding the disseisin of an adverse occupant as an element of the acquisition of title under the statutes of limitation, we think is applicable to this particular question, without any conflict whatever with our Supreme Court:

"The consummation of the title is not a matter which the grantees can control, but one which rests entirely with the government." Gibson v. Chouteau, supra.

Justice Pleasants, in the case of Dooley v. Maywald, 18 Tex. Civ. App. 391, 45 S. W. 224, said:

"We are of the opinion that the statute of limitations is not available to the appellee, for the reason that the title, legal and equitable, is still in the state, and the appellant has but an inchoate title, a right under the statute upon compliance with its terms, to acquire the title from the state, to the exclusion of all claimants. The evidence in the case shows the appellee to be but a squatter upon the land; never having made any effort to acquire it from the state; and to permit him to defeat a purchaser from the state from recovering the possession of the premises, by plea of the statute of limitations, would, in effect, be to deprive the state of the power to sell its lands, in the mode and manner prescribed by its laws."

We are not quoting Justice Pleasants' language because, forsooth, it might be considered in opposition to the principle enunciated in Dutton v. Thompson, and the cases following, but as applicable to the condition apparent in the record here of an attempted transfer of a school land title by a judgment against the owner of same under the plea of the statute of limitations, when the amount involved, $42\frac{1}{10}$ acres, is an incommensurate amount, violating the spirit, if not the letter, of the statutes with reference to alienation of the amount of school land cited above.

We assume it is clearly discernible how such a judgment would interfere with the state's constituted authorities as to its lands: The state cannot recognize a judgment for such a quantity of land as a transfer of title; the law says the purchaser may sell in 40-acre tracts or multiples thereof, and such a conveyance passes title to the vendee, which the commissioner shall file with the necessary obligations. The implied meaning of the acts is in opposition to the judgment, "No account shall be opened and no patent issued," for such an attempted transfer of such a quantity of land. It would have a tendency to produce forfeitures, prevent the sale of the land by the purchasers in proper quantities, cloud the titles to land in which the state has an interest, and interfere with the payment to the school fund of the principal and interest. Such a judgment holder, with no contract with the state, might very readily rely, in some instances, on the purchaser to pay his own obligation, who again might very conveniently fail to pay. Article 3347, now 5679, Revised Statutes, reads as follows:

"Whenever in any case the action of a person for the recovery of real estate is barred by any of the provisions of this chapter, the person having such peaceable and adverse possession shall be held to have full title, precluding all claims."

The Supreme Court has said:

"By the plain terms of this statute the continuous, peaceable, adverse possession of the land for ten years, claiming title thereto, conferred upon the defendants in error 'full title'; that is, all of the title which had emanated from the state vested in defendants in error as against the claim of any and all persons." Burton's Heirs v. Carroll, 96 Tex. 320, 72 S. W. 582.

If, in this character of case the state is forbidden from opening an account with the judgment holder, and issuing a patent for such an amount of land recovered, the judgment holder clearly does not receive the equity of redemption from the purchaser from the state by such a judgment different from an ordinary case of an adverse holder of land against a vendee who owes the vendor and from whom the adverse occupant, especially after judgment could redeem. Hence, if under the law the state cannot approve nor recognize such a title, and is forbidden to issue a patent thereupon, does such a judgment holder obtain from the purchaser from the state the title which the state has vested in such a purchaser? We think not, because it is in violation of the spirit, if not the letter, of the law regarding the alienation and patenting of the state's land. If that be true, it follows that such an adverse occupant cannot maintain such an action: He does not get the title "which had emanated from the state," using conversedly the language of Justice Brown. This case is not in conflict with Higginbotham v. Weaver, 177 S. W. 532. That was a case of an occupant claiming the land under a school land deed, prescribing under the statutes of limitation of five years, as against a claim of documentary title from the state in another under a senior survey and patent.

An analysis of appellant's third and fourth assignments of error show that the complaint is against the trial court's action in sustaining a demurrer to his plea of limitation of ten years.

The fifth assignment of defendant is a complaint that under the facts alleged in his answer (we assume also he means the statute of limitation) plaintiff is not entitled to recover. The first assignment challenges the action of the court in overruling his exception to the one-year statute of limitation, pleaded by plaintiff, and the second assignment is wholly immaterial to the merits. We are considering that the real issue is one of

limitation, and that plaintiff has the school land title, as pleaded and proved by her. Defendant, in his first assignment rather admits. that:

He "was not in any way attacking the regularity or validity of the sale and award by the state of Texas of the lands in controversy to the plaintiff," etc.

Hence in the interest of expedition of a determination of this cause, which we assume counsel for defendant will favor, and to the end of a speedy movement to the Supreme Court, we affirm the judgment of the trial court. Affirmed.