BRADY v. McCUISTION.   (No. 1430.)

(Court of Civil Appeals of Texas. Amarillo. March 5, 1919. Rehearing Denied April 2, 1919.)

1. TRIAL ⟡351(2)—SPECIAL ISSUES—ERRONEOUS REQUESTS.

Under Rev. Civ. St. art. 1985, requests for special issues need not embody correct propositions of law on the issue to constitute such a request as will require the court to submit the issue.

2. TRIAL ⟡351(2) — SPECIAL ISSUE — PROVINCE OF JURY—DUTY OF COURT TO DECLARE THE LAW.

In an action to recover land, the objection to the submission of an issue on the statute of limitations that it would include land not subject thereto would not justify refusal to submit the issue, since the jury were to find the facts and the court to declare the law thereon.

3. ADVERSE POSSESSION ⟡115(1) — SUFFICIENCY TO REQUIRE SUBMISSION OF SPECIAL ISSUE OF LIMITATION.

In trespass to try title evidence held sufficient to require submission to the jury of the special issue as to defendant's ownership of the land from continued privity of possession under claim of right, under the ten-year statute of limitations.

4. ADVERSE POSSESSION ⟡43(7)—PRIVITY OF TITLE — SALE — FORECLOSURE OF VENDOR'S LIEN.

Where a vendor conveyed, retaining a lien to secure purchase-money notes, and by action in court rescinded the conveyance for nonpayment of lien notes, later obtaining quitclaim deeds from the purchasers, such transactions made no break in the privity of vendor's title.

5. BOUNDARIES ⟡37(3)—EVIDENCE—SURVEYS—LOCATION OF MONUMENT—FINDINGS.

In an action to recover land, evidence held sufficient to support the finding of the jury as to the location of a monument from which surveys were run and by running courses and distances from corner so established that the strips of land in question belonged to three certain sections as contended by plaintiff.

6. BOUNDARIES ⟡3(5)—SURVEYS—CALLS FOR COURSES AND DISTANCES — UNMARKED LINES.

Calls for adjoining surveys should not be rejected because the distance gave out from this selected corner before reaching the adjoining survey called for, but such call should have its proper weight and according to evidence made at the time and found on the ground, and it is not an invariable rule that course and distance will prevail over a call for unmarked lines.

Appeal from District Court, Randall County; Hugh L. Umphres, Judge.

Trespass to try title by N. W. McCuistion against J. T. Brady and another. Judgment for plaintiff, and defendant J. T. Brady appeals. Reversed and remanded.

Kimbrough, Underwood & Jackson and Crudgington & Works, all of Amarillo, for appellant.

C. E. Gustavus, of Amarillo, for appellee.

HUFF, C. J. This is an action to establish title to certain lands. The strips of land in question will be better understood from the following sketch:

The L around 32 being the strip in controversy.

The appellee, N. W. McCuistion, sued in trespass to try title J. T. Brady and Sam Edwards. The appellee set up that he owned the west ½ of section 13, and was the owner of sections 12 and 33, setting out the field notes of each, and alleged that appellant and Edwards entered upon and ejected him from 155.5 acres off the west side of section 13, 24.5 acres out of the northwest corner of section 12 and 74 acres off of the south side of section 33, describing by metes and bounds the strips or parcels of land so wrongfully entered. J. T. Brady answered by general denial and plea of not guilty; also pleaded the three, five, and ten year statute of limitations and improvements in good faith. Edwards filed a disclaimer. The court submitted the case on special issues, and upon certain requested special issues by the parties. The issues of boundary we will notice later. The court submitted no issue on either plea of limitation. The appellant objected to the charge because it omitted to submit the issue on the ten-year statute, and also requested two special issues, which the court refused. One of the issues requested was:

"Has or has not defendant J. T. Brady, and those under whom he claims lands in controversy in this suit, had actual and continuous possession thereof, holding the same under fence for a period of more than ten years before the filing of this suit, and since October, 1897?"

The other issue requested is in the same language except it is not limited by the clause "since October, 1897."

[1] Assignments 1, 2, 3, 4, 6, and 7 are based upon the omission of the court to submit the issue on the ten-year statute and the failure to submit to the jury the issues as requested. The appellee objects to these assignments because it is asserted it is not error to fail to submit an issue or such error that will require a review of the action of the court thereon upon appeal; that in order to require a review proper issues must have been requested; that the issues requested in this instance were not properly drawn or were defective, and otherwise were not proper. At this time we shall assume that the evidence raised the issue and called for the determination of that issue either by the court or jury. The first part of article 1985, R. C. S., makes it the duty of the court "to submit all issues made by the pleadings." This mandate is, however, qualified in the clause immediately following:

"But the failure to submit any issue shall not be deemed a ground for reversal of the judgment upon appeal or writ of error, unless its submission has been requested in writing by the party complaining of the judgment."

This statute gives the right to the parties to have all their issues submitted to the jury, but—

"it is only by written request that the party puts on record his dissent from the action of the court and his insistence upon the right to have the jury, rather than the judge, decide the point at issue." Moore v. Pierson, 100 Tex. 113, 94 S. W. 1132.

The request in writing to submit the issue to the jury is not required by the statute to embody a correct proposition of law on the issue in order to be a request for the jury to pass on the question rather than the judge. The court is notified that on the issue presented by the pleadings and evidence the party desires a finding of the jury, and not of the judge. It therefore becomes the duty of the trial court, when the request is made, to submit the issue to the jury. Our courts in some respects have treated special issues as being controlled by the rules relative to general instructions. This court has said:

"If, however, the issue so presented were duly pleaded by the party, and the issue called attention to an affirmative defense, even though defective, as we understand the rule, it will be sufficient to require the court to submit a proper issue thereon. Roberts v. Houston Motor Co., 188 S. W. 257; Olds Motor Co. v. Churchhill, 175 S. W. 787." Texas Refining Co. v. Alexander, 202 S. W. at pages 133, 134.

The court, having failed to submit this issue to the jury, and also having refused a written request to do so, has deprived the appellant of his statutory right if the evidence presents the issue. We regard the issue as drawn by appellant verbally inaccurate, and as drawn, perhaps, should not have been given. Appellant asserts in this court that in framing the request he had in mind the rule announced in Houston Oil Co. v. Jones (Sup.) 198 S. W. 290, and Fowler v. Woods, 200 S. W. 248, and in wording the issue transposed certain words. There should be no difficulty in drafting a

correct issue, and doubtless the trial court can do so.

[2] Another objection to the issue by appellant is that section 12 was a school section and as there were only 24.5 acres inclosed and claimed the statutory period, it would not, under the laws of Texas, give title by limitation. This objection would not apply to sections 13 and 33, which were not school sections. If the jury should find for appellant, and those under whom he holds in privity entered with the intent to claim the land as his or their own, and for himself or themselves, for 10 years, this would give title to the disputed strip unless the law prohibited the divestiture of title out of school funds by limitation. As to such of section 12 so inclosed and claimed the court could, as a matter of law, declare it, the 24.5 acres, would not be affected by the entry and possession. All the jury were required to do was to find the facts and upon the establishment of the facts the court would declare the law. We shall not at this time enter into a discussion of the question whether a holding for 10 years will divest title out of the school fund. The writer hereof agrees with Mr. Justice Hendricks' conclusion in Whitaker v. McCarty, 188 S. W. 502, in which, however, a writ of error has been granted by the Supreme Court, and still adheres to the conclusion reached in the case. We presume, unless the Supreme Court shall announce a different view, the trial court will follow the conclusion expressed in that case, but that should not affect the question of limitation as to sections 13 and 33.

[3] We believe the evidence in this case presents the issue of title in appellant to the strips of land sued for by appellee under the statute of 10 years' limitation. One C. G. Looney originally filed on section 32 November 8, 1891, and constructed a dugout in the southeast corner and south of where the house is now situated. These improvements are shown to be upon the disputed strips of land. Soon after filing on the land Looney sold it to W. P. Pierson, who went into possession of the land and built a house, put down a well, erected a windmill, and put up the fence on the east line of the section as he claimed it, and also on the south line of the section as he claimed it. Part of the land was placed in cultivation on the disputed strips. The fences, house, windmill, and improvements have so stood, and have been used by the various owners or their tenants ever since—nearly 27 years up to the filing of the suit. The appellant, Brady, is the owner of section 32 by mesne conveyances from Pierson and in privity with him. There is evidence which would justify a finding that either Pierson or his subsequent vendees or tenants, for the owners, have been in actual, peaceable, and adverse possession of these lands, using and cultivating the same, since their occupancy. The evidence, in our judgment, presents no break in privity of possession or claim of right as would authorize the trial court to declare as a matter of law that the continuity thereof was broken. The mere fact that upon a resurvey it may be shown that the actual survey of section 32 would not reach the fence on the east and south sides or either of them would not defeat the claim made by the various owners for 10 consecutive years. It would seem the very purpose of the statute was to set at rest disputes of this nature.

[4] This case is complicated, however, with other issues which require notice at this time. In 1896 W. P. Pierson, while occupying the land, permitted the original contract of purchase from the state to forfeit for nonpayment of interest. The land was reclassified and again placed on the market for sale at $1 per acre instead of $2 per acre, under the former classification and sale under which Pierson had held. Under the new classification and valuation Pierson filed his application to repurchase with the proper authorities October 22, 1897. His application was accepted and the award was made to him thereon March 15, 1898. The evidence would indicate that Pierson was during the interim occupying the strips of land as he had done previous and subsequent thereto and until he sold the land. There are several conveyances from Pierson down to S. V. Gist, January 15, 1907, who thereafter died, and his wife qualified as community survivor, and as such she conveyed to J. T. Downing and Carl D. Works section 32, and by a number of conveyances the title came back to Downing August 5, 1908. In the conveyance from Mrs. Gist to Downing and Works a vendor's lien was retained to secure the payment of ten purchase-money notes. On August 15, 1908, Downing conveyed to Reeder, Graham & Williams the three strips of land in question, describing the same by field notes, purporting to bound the west and north of the strips by the east line and the south line of section 32 for the north and west lines of the strips and the fence east and south as the east and south line of the strips, reciting that the strip was a portion of sections 33, 12, and 13, inclosed within the fence inclosing section 32, and using the language:

"Each of the above tracts of land being inclosed by the same fence and with all of section 32, block 2, A. B. & M."

After the conveyance by Mrs. Gist it appears she married a man by the name of Templeton, and from a copy of the judgment in this record, dated February 28, 1910, it appears she sued Downing, Works, and Reeder, Graham & Williams, to rescind the conveyance theretofore made by her to

Downing and Works, making Reeder, Graham & Williams parties defendants. The grounds for rescission would appear to be the nonpayment of the vendor's lien notes to secure which a vendor's lien had been retained in the deed from Mrs. Gist to Downing and Works. She secured judgment canceling the conveyance of section 32 to said parties and recovered the section from all parties to that suit. Some time after the rendition of this judgment appellee obtained quitclaim deeds from Reeder, Graham & Williams. The evidence would warrant the finding that Mrs. Gist again entered into possession of this land, and continued to use the same until she sold it to appellant, and he until the suit was filed. From the time of the new application to purchase from the state made by Pierson until the time Downing purported to convey to Reeder, Graham & Williams, August 15, 1908, more than 10 years elapsed. The evidence as to possession and use of the land by the respective owners by themselves, and by tenants, during that period under a claim of title, is sufficient to submit the question of title under the 10-year statute of limitations for that period. If the title was perfected by such time when Mrs. Gist was reinvested by the judgment, she recovered all the interest either Downing, Reeder, Graham & Williams, or other parties to the suit had in the land. It is apparent, we think, that the right which Reeder, Graham & Williams secured by Downing's deed was that which he and others had to the land, and that they took it in privity with such previous owners. The record does not show any right claimed by Reeder, Graham & Williams through the owners of sections 12, 13, and 33, or that they were claiming any privity with such owners. The record does not present an adverse holding to the owners of section 32 by Reeder, Graham & Williams, but does present a holding in privity with such owners, and all the right they ever acquired by virtue of the conveyance to them by Downing was such interest as Downing and his predecessors in title had to the strip of land, and when that right or title was rescinded they had nothing, and it was divested out of them and vested in Mrs. Gist, and therefore there was never an adverse holding to her in the meaning of the statute. The appellant holds not only a deed from Mrs. Gist to section 32, but also a deed by metes and bounds to the strip of land in controversy, and if it was acquired by limitation, he has a deed to it. In so far as this record shows, Reeder, Graham & Williams were holding in privity with the owners of section 32 and adverse to the owners of sections 12, 13, and 33. It does not occur to us as being necessary to go into nice distinctions as to what passed by the conveyance of section 32. The conveyances appear generally to have been made with reference to the lines fixed by the fences. The appellant was in possession thereof when suit was brought, and if the title had vested in the owners under whom he is in privity, appellee had no' title, and could not recover. We believe the trial court should have submitted the issue of limitation under the statute of 10 years for the finding of the jury.

Substantially the same objections are made to assignments presenting the issues of boundary as to those presenting limitation. We will not further discuss the objections at this time.

[5, 6] The trial court submitted issue No. 1, which is substantially all the issue on the question of boundary submitted by him. The other issues on that point were practically on admitted facts. That issue is as follows:

"At the time block 2, A. B. & M., was surveyed and constructed, was there upon the ground and within the block and at the place afterwards referred to as Wolf Den corner a monument about 12 feet at the base, about 8 feet high, as is called for in the field notes of some of the surveys in the block?"

This issue was answered in the affirmative. The evidence is sufficient to support the findings of the jury. By running course and distance from the corner so established in block 2, A. B. & M., the evidence would authorize a finding by the trial court that the strips of land belonged to sections 12, 13 and 33, as contended by appellee.

The contention of appellant, however, is that, while the field notes of sections 162, 163, and 196 called for the corner submitted, it in fact is the corner of section 12, block 1, B. S. & F., made on the same day by the same surveyor, and it is not the only corner or line called for which should be taken into consideration in fixing the location of the sections in block 2, A. B. & M.; that the northwest corner of section 20, block B-4, H. & G. N. R. R. Co., was located on the ground which calls for a mound 12 feet at the base and 8 feet high, and the northwest corner of section 16 in block 6, I. & G. N. R. R. Co., called for same kind of corner. It was agreed upon the trial that block 1, B. S. & F., north of the main part of block 2, A. B. & M., in which the corner referred to in the issue submitted is situated, contained 48 surveys, the field notes of which bear date July 20, 1875, and are signed by Hedrik; that in block 2, A. B. & M., of which the sections in controversy form a part, there are 232 surveys made on the same day, by the same surveyor. Block 6, I. & G. N. R. R. Co., contained 208 surveys. the field notes are dated June 28, 1875, and block 8, for the same company, contains 30 surveys, and the field notes are dated June 29, 1875. Both blocks, 6 and 8, I. & G. N., lay south of block 2, A. B. & M. Block B-4,

H. & G. N. R. R. Co., contained some 60 surveys, and the field notes are dated June 30, 1875. This block lay east of block 2, A. B. & M. Block 9, B. S. & F. is west of block 2 and has some 200 surveys. The field notes are dated January 1, 1876. All the field notes of the surveys are signed by the same surveyor, H. C. Hedrick. The field notes for block 2, A. B. & M., call to begin at No. 1 and run south, calling for the west line and corners of certain sections in block B–4, lying east. The northwest corner of section 20 in that block is not called for in terms, but the evidence tends to show that this corner has been identified on the ground and can be located. The evidence is not so clear that any of the lines south of block 2, A. B. & M., have been located or fixed by markings found on the ground. Apparently it was the view of the trial court that, as the corner submitted to the jury was called for by three surveys in the field notes of block 2, A. B. & M., the block should be surveyed from that point by course and distance which would be superior to the calls for the lines of adjoining surveys. This, perhaps, would be true if the lines of adjoining surveys are open and unmarked and were called for by conjecture. There is evidence that the west line of B–4 east of block 2 is a marked line and fixed by a monument at the northwest corner of section 20 thereof. This corner appears to have been identified on the ground. The calls for that line were not therefore for an open, unmarked line on the prairie, but for a marked line, which the surveyor had placed in just a few days before he made the survey for block 2. We do not believe this call for the line should be disregarded merely because the northwest corner of section 20 thereon was not called for specifically. In fact, the corner selected by the court was a common corner to two blocks, and in a sense an outside call from block 2. It was not peculiar to block 2. Its dignity did not exceed calls for other lines or corners in other blocks made common to both blocks. Hence we do not think that calls for adjoining surveys should be rejected because the distance gave out from this selected corner by the court before reaching the adjoining survey called for, but such call should have its proper weight and according to the evidence made at the time and found on the ground. We do not think, this is in conflict with Taft v. Ward, 58 Tex. Civ. App. 259, 124 S. W. 437, but in accord therewith. It is not established as an invariable rule in this state that course and distance will prevail over a call for unmarked lines. Maddox v. Fenner, 79 Tex. 279, 15 S. W. 237; Wyatt v. Foster, 79 Tex. 413, 15 S. W. 679.

"Those calls should control, even though of the lowest rank, which, under all the facts and circumstances in evidence, most clearly indicate the intention of the grant, or which point out with the greatest probability the footsteps of the surveyor. Stafford v. King, 30 Tex. 257, 94 Am. Dec. 304; Lilly v. Blum, 70 Tex. 710, 6 S. W. 285; Huff v. Crawford, 89 Tex. 223, 34 S. W. 610. The reason why a call for an unmarked prairie line will usually not control a call for distance is that, being unmarked, the surveyor probably did not know where such line was, but supposed it to be at the place indicated by his call for distance, and that he actually ran his line the distance called for in his field notes, and called for the unmarked line of the old survey upon the mistaken belief that he had reached it. On the other hand, a call for an unmarked prairie line has sometimes been allowed to control the call for distance, for the reason that, although the line was invisible, yet, its location being easily ascertained by running it out from its other known lines or corners, or from its connecting lines in the vicinity, it is reasonable to suppose that the surveyor ascertained its true location by running it from such connection, and therefore did not make any mistake as to its location, but more probably made a mistake in measuring the distance to such line." State v. Sulflow, 60 Tex. Civ. App. 615, 128 S. W. 652.

See Austin v. Espuela Land & Cattle Co., 107 S. W. 1138.

It would appear from the field notes of block 2, A. B. & M., it was the purpose of the surveyor thereof to occupy all the space between the lines on the east, south, and north, as he made all the surveys at or about the same time, and if the lines on the east and south can be established, it would seem that block 2, should be so extended. At any rate, one corner should not control the entire location, when there are other calls which may be found or established and should have consideration in establishing the location and boundary of the sections constituting the block.

The case will be reversed and remanded.